**Cora M. TUTTLE, Petitioner–Appellee,**

v.

**The MICKOW CORPORATION, Employer, and Great West Casualty Company, Insurance Carrier, Respondents–Appellants.**

No. 86–787.

Court of Appeals of Iowa.

Nov. 30, 1987.

R. Ronald Pogge of Hopkins & Huebner, P.C., Des Moines, for respondents-appellants/cross-appellees.

Roger L. Ferris of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for petitioner-appellee/cross-appellants.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

OXBERGER, Chief Judge.

In this appeal Mickow Corporation and its insurer appeal the district court's decision overruling the industrial commissioner's denial of death benefits to the claimant, Cora Tuttle. Cora Tuttle cross-appeals from the district court's finding that there was substantial evidence to support the

industrial commissioner's finding that a load was not assigned to Charles Tuttle in Norfolk, Nebraska. We affirm.

Charles Tuttle was a truck driver working for Mickow Corporation (Mickow). He entered into an agreement whereby he would lease his tractor and trailer to Mickow and work exclusively for Mickow. He was required by the agreement to maintain his tractor and trailer in good condition. Tuttle had been leasing a trailer when he decided to purchase one in an effort to increase his income. The newly purchased trailer was left in Norfolk, Nebraska, for Tuttle to pick up.

In June 1981, Tuttle delivered a load to Willmar, Minnesota. After delivery he called the Mickow dispatcher to inform him he was going "out of service" temporarily so he could acquire the trailer in Norfolk.[1] Tuttle traveled to Des Moines to finalize the trailer purchase and lease it to Mickow. He then proceeded to Norfolk to get the trailer. The industrial commissioner found that a load was not assigned to Tuttle in Norfolk. Cora Tuttle disputes this finding. After picking up the trailer, Tuttle was going to proceed to his home in Arkansas to perform some maintenance work on the trailer. While traveling in his tractor, Tuttle was involved in a fatal accident east of Avoca, Iowa.

His widow, Cora, then sought death benefits under the workers' compensation statute. The industrial commissioner, in a decision reversing the deputy commissioner, denied the benefits finding Tuttle was not killed while in the course of his employment since the Norfolk trip was purely personal. The district court then reversed the commissioner and this appeal was taken.

■ We review the decision of the district court, also rendered in an appellate capacity, and determine whether the district court correctly applied the law. *Hy–Vee Food Stores v. Dept. of Revenue*, 379 N.W.2d 37, 39 (Iowa App.1985). To make this determination, we apply the standards of § 17A.19(8) to the agency action. *Jack-*

*son County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429–30 (Iowa 1979). We are bound by the commissioner's findings of fact if they are supported by substantial evidence. *Frost v. S.S. Kresge Co.*, 299 N.W.2d 646, 647–48 (Iowa 1980). We, however, are not bound by the commissioner's legal conclusions. *Id.* at 648.

For the sake of clarity we address Cora Tuttle's cross-appeal first. Cora argues there was not substantial evidence to support the commissioner's finding that a load was not assigned to Charles Tuttle in Norfolk. The district court found the finding to be supported by substantial evidence and so do we.

Evidence is substantial when a reasonable person would accept it as adequate to reach a conclusion. *Hy–Vee Food Stores v. Dept. of Revenue*, 379 N.W.2d 37, 39 (Iowa App.1985). The question is not whether the evidence might support a different finding, but whether the evidence supports the findings actually made. *Id.*

■ The record reveals that on June 9, 1981, Charles Tuttle called the Norfolk dispatcher, Eli Zimmerman, and told him he was going out of service so he could take care of some personal business in Des Moines. Cora argues that while in Mickow's Des Moines terminal, Charles was dispatched a load out of Norfolk to Bixby, Oklahoma. The driver who hauled the load testified he was told the only reason he got the load was because Tuttle had died. Zimmerman, however, does not recall assigning a load to Tuttle. The Des Moines dispatcher, Michael Young, also does not recall a conversation in which Tuttle was assigned a load. Also, the documentary evidence introduced indicates a load had not been assigned to Tuttle. It was a company practice to not dispatch drivers over the telephone, but there was evidence this rule was not always followed.

In light of the above evidence, we cannot conclude the commissioner's finding was not supported by substantial evidence.

---

1. When a driver is "out of service," he is not offered any loads to carry but his name ad-

vances on the drivers list. A driver can stay "out of service" for as long as he chooses.

The issue was hotly disputed, and ample evidence was presented. We hold, therefore, the finding was supported by substantial evidence and affirm that portion of the district court's decision.

The primary issue on appeal is whether Charles Tuttle was in the course of his employment at the time of his death. The district court found that, as a matter of law, Tuttle was in the course of his employment. In doing so, the court adopted a portion of Cora Tuttle's brief without specifying which theory was dispositive.

Mickow's primary argument is that Tuttle had deviated from his employment at the time of his death and that his actions did not benefit his employer. They rely on the facts that Tuttle was "out of service" and was traveling to Norfolk to pick up a trailer he purchased in an attempt to make more money. Mickow claims the exchange of trailers was of no benefit to Mickow, only Tuttle. They, as did the commissioner, categorize Tuttle's trip as a purely personal one.

In her brief to the district court, Cora set forth four general principles which she claimed allowed for a recovery under these facts. She argued: (1) that Tuttle was required to supply a tractor and trailer for his employer and, therefore, the trip to and from work is within his course of employment; (2) that the trip to and from work is within the course of employment since Tuttle was traveling in a tractor controlled by Mickow; (3) that, since Tuttle was required to supply the tractor and trailer for his work, Mickow was sufficiently benefited by the preparation or repair of the trailer to bring Tuttle within the course of his employment; and (4) that, even if Tuttle's trip was primarily personal, if there is a concurrent employer benefit to Mickow, then Tuttle is within the course of his employment.

To determine the resolution of this case, we must first ascertain which issues are factual and which issues are legal. In *Hawk v. Jim Hawk Chevrolet–Buick, Inc.*, 282 N.W.2d 84, 87 (Iowa 1979), the supreme court said:

The determination whether an injury or death arose out of or in the course of employment consists of a mixed question of law and fact. The operative events which give rise to the injury or death are questions of fact. Where these issues are either resolved or undisputed, and supported by substantial evidence, the legal questions whether the facts justify an award or denial of benefits remains. ... The industrial commissioner, while setting out the operative events in his review decision, failed to designate the events as "findings of fact." The commissioner, instead, erroneously reserved that label for the bold conclusion that the death did not arise out of or in the course of employment.

So to, in this case, the commissioner in his findings of fact concluded, "Decedent's death neither arose out of nor was in the course of his employment." Additionally, the commissioner made a finding of fact that the "Decedent's trip to Norfolk was purely personal." Such findings are legal conclusions based on operative facts.

Although labeled by the commissioner as "Review of the Evidence," the language used throughout establishes the commissioner made additional findings of fact. In *Hawk, supra,* the supreme court treated statements of the commissioner not labeled as findings of fact as findings of fact. *Hawk,* 282 N.W.2d at 87. We adopt the following statements by the commissioner as findings of fact:

The evidence presented supports the following sequence of events. The decedent, in service, delivered a load from Norfolk, Nebraska, to Willmar, Minnesota. At Willmar the decedent called Mickow's terminal in Norfolk and asked to be put out of service. At that time decedent proceeded, as his own records indicate, out of service to Des Moines to take care of personal business. While in Des Moines the personal business was attended to. Claimant stopped at Mickow's Des Moines terminal to sign up [the new] trailer and discuss bounce miles. Claimant fails to establish that the decedent did in fact have a load waiting for him at

Norfolk or that a load even existed at that time ...

Employer benefit is a question to be discussed. It could be argued that if the decedent picked up his trailer it would help further his employer benefit. Be that as it may, it must be remembered that claimant and her husband did not purchase the trailer for the benefit of the employer, but for their own benefit. The claimant stated it was purchased so they could make more money. Absent a load and sufficient employer benefit, plus substantial benefit to claimant and decedent, the decedent's trip to Norfolk was a personal one.

Assuming for the moment that decedent did have a load in Norfolk as well as his trailer, the dual purpose doctrine would preclude the decedent's recovery. For had the load been cancelled the decedent would have continued on to Norfolk to pick up his new trailer. The converse cannot be so asserted. It is very questionable and highly speculative to say that if the decedent had not been able to pick up his new trailer he would have taken the load in Norfolk. Mitigating against this is the fact that there is a terminal in Des Moines. For the reasons set forth above claimant is (sic) found not to have been in the course of his employment.

Some of the operative facts bearing on the purpose of decedent's trip to Norfolk are listed by the commissioner in his findings of fact. They are:

6. Decedent was effectively prevented from driving for any other than Mickow.

7. Decedent was an employee of Mickow.

10. Decedent had purchased a trailer that was at Mickow's terminal in Norfolk.

13. Late on the night of June 10, 1981, decedent began traveling to Norfolk, Nebraska, to pick up a recently-purchased trailer.

14. During this trip, decedent remained out of service.

17. At 12:43 a.m. June 11, 1986, on Interstate 80 east of Avoca, decedent was involved in a fatal accident.

The key operative fact is: was decedent performing any duty for defendant company, the Mickow Corporation, at the time of the accident? The commissioner found:

... it must be remembered that claimant and her husband did not purchase the trailer for the benefit of the employer, but for their own benefit. The claimant stated it was purchased so they could make more money. Absent a load and sufficient employer benefit, plus substantial benefit to claimant and decedent, the decedent's trip to Norfolk was a personal one.

Employees work to make money. The mere fact their efforts result in a monetary benefit to them does not make their effort purely personal. The issue is: was the activity the decedent was engaged in at the time of his death for the benefit of his employer.

In this case the decedent was engaged at the time of his death in an activity for the benefit of his employer. The decedent was required, under the Lease Agreement, to haul exclusively for Mickow. The decedent was also required to provide his own tractor and trailer equipment. Decedent, pursuant to the agreement, arranged for a trailer and, while in Des Moines, had added the new trailer to the Lease Agreement. It was this trailer he was traveling to pick up when he was killed. Clearly, he was engaged in an activity that would benefit his employer.

We hold that in the case of over-the-road truck drivers that are required by their employers to provide the tractor and trailer equipment, that efforts performed by the employee to place the equipment in a condition to be utilized in the performance of the employer's business is work performed in the course of employment.

In this case the decedent was en route to pick up the trailer to be used exclusively in Mickow's business. His sole purpose in picking up the trailer was to use it in the employer's business. The fact he bought the trailer instead of leasing it so that he

could earn more money does not detract from the undisputed fact that the trailer was to be used exclusively in the employer's business. We conclude, based on the undisputed facts, that Tuttle's death arose out of an in the course of his employment.

The district court is affirmed and the case is remanded to the commissioner for an award of appropriate worker's compensation benefits as provided by law.

AFFIRMED.